AO 108 (Rev. 06/09)  Application for a Warrant to Seize Property Subject to Forfeiture

# UNITED STATES DISTRICT COURT
### for the
Southern District of California

| | |
|---|---|
| In the Matter of the Seizure of<br>*(Briefly describe the property to be seized)*<br>All money, funds, and credits on deposit in, for the<br>benefit of, or attributable to Mission Federal Credit<br>Union account no. 0091641319 | )<br>)<br>)<br>)<br>) |

Case No. **23mj0690**

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS TO SEIZE PROPERTY SUBJECT TO FORFEITURE

I, a federal law enforcement officer or attorney for the government, request a seizure warrant and state under penalty of perjury that I have reason to believe that the following property in the _____Southern_____ District of _____California_____ is subject to forfeiture to the United States of America under ____18____ U.S.C. § 981(a)(1)(A),  *(describe the property)*:

and 982(a)(1); and Title 21, U.S.C., Sections 853(a)(1) and (a)(2), and 881(a)(6).

All money, funds, and credits on deposit in, for the benefit of, or attributable to Mission Federal Credit Union account no. 0091641319, held in the name "Elite Bodies by Eddie, LLC"

The application is based on these facts:
See attached affidavit of DEA Special Agent James R. Gillis, which is incorporated by reference, and Attachment A and B, also incorporated by reference.

☑ Continued on the attached sheet.

*James R. Gillis*
_____
*Applicant's signature*

JAMES R. GILLIS, DEA Special Agent
_____
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____telephone_____ *(specify reliable electronic means)*.

Date: ___March 1, 2023___

*Allison H. Goddard*
_____
*Judge's signature*

City and state:  San Diego, California

HON. ALLISON H. GODDARD, U.S. Magistrate Judge
_____
*Printed name and title*

**ATTACHMENT A**

(Accounts to be seized)

The **Subject Accounts** to be seized contain proceeds of the illicit sales of controlled substances, and the accounts are properties involved in money laundering in violation of Title 18, United States Code, Section 1956 (money laundering) and Title 21, United States Code, Sections 841, 846 and 856 (manufacturing and distributing a controlled substance, conspiracy to commit same, and maintaining a drug-involved premises), are as follows:

| Bank | Account Number | Account Title |
|---|---|---|
| Mission Federal Credit Union | 0091631792 | Edgar Feliciano |
| Mission Federal Credit Union | 0091641319 | Elite Bodies by Eddie, LLC |

**ATTACHMENT B**
(Instructions to Financial Institutions)

Please do not execute the attached warrant should the funds in the account be nominal, that is, below a liquidation amount of $1,000; and

Please send seized funds via a cashier's check made payable to the United States Marshals Service to the following address:

Drug Enforcement Administration
ATTN: Asset Forfeiture Unit
San Diego Division
4560 Viewridge Ave
San Diego, California 92123

Upon any account holders contacting your financial institution to inquire about the seized funds, direct them to contact DEA Special Agent James R. Gillis at (619) 629-9045

## <u>AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEIZURE WARRANT</u>

I, James R. Gillis, being duly sworn under oath, declare and state:

### <u>TRAINING AND EXPERIENCE</u>

1.    I am a federal law enforcement officer within the meaning of Rule 41(a)(2)(C) of the Federal Rules of Criminal Procedure. I am authorized under Rule 41(a) to make applications for search and seizure warrants and to serve arrest warrants. I am authorized to investigate violations of laws of the United States and to execute warrants issued under the authority of the United States. I have been employed by the United States Department of Justice, DEA, as a Special Agent since June 2018. I am presently assigned to the DEA San Diego Field Division, Narcotic Task Force ("NTF"). During the course of my employment as a DEA Special Agent, I have investigated illicit controlled substance trafficking in San Diego and surrounding areas.

2.    I have had formal training and experience in controlled substance investigations and I am familiar with the manner in which controlled substances are manufactured, packaged, marketed, distributed, and consumed. I have received training in the identification of all types of controlled substances by sight and odor. I have participated in multiple arrests for controlled substances violations. I have also debriefed defendants, confidential sources, and witnesses who had personal knowledge regarding drug trafficking organizations. In addition, I have discussed the methods and practices used by drug traffickers with numerous law enforcement officers and confidential sources. I have also participated in many aspects of drug investigations, including but not limited to, undercover or confidential source buy operations, telephone toll analysis, records research, physical and electronic surveillance activities, and wiretap investigations. In October 2018, I completed a 16-week Basic Agent's School at the DEA Academy in Quantico, Virginia, which included training and familiarization in the manufacture, cultivation, distribution, and abuse of all types of controlled substances.

3.      Based on my training and experience and discussions with DEA agents and other law enforcement officers, about their experiences and the results of their investigations and interviews, I am familiar with the methods utilized in controlled substance trafficking operations, as well as the methods and means used by Drug Trafficking Organizations ("DTOs") to coordinate controlled substance trafficking. Additionally, I know that once the controlled substances reach their final destination cities they are distributed by wholesale dealers down to street level users often through mid-level distributors. I am also aware that controlled substance trafficking organizations must collect and transport controlled substance proceeds from the sale of their controlled substances and often these controlled substance proceeds are transported in the form of bulk currency.

4.      Based on my training and experience, and conversations with other law enforcement personnel, I have become familiar with the methods utilized by DTO's and the unique trafficking patterns employed by such organizations. I know that controlled substance traffickers often require the use of a telephone facility to negotiate times, places, schemes and manners for importing, possessing, concealing, manufacturing and distributing controlled substances and for arranging the disposition of proceeds from the sales of controlled substances. I know that professional controlled substance operations depend upon maintaining their extensive contacts. The telephone enables controlled substance dealers to maintain contact with controlled substance associates, controlled substance suppliers and controlled substance customers. I also know that controlled substance traffickers sometimes use fraudulent information, such as fictitious names and false addresses, to subscribe to communication facilities, especially cellular phones, and frequently use communication facilities to thwart law enforcement efforts to intercept their communications. Through these investigations, my training and experience, and my conversations with other law enforcement investigators, I have become familiar with the methods used by controlled substance traffickers to smuggle and safeguard the

controlled substances, to distribute controlled substances, and to collect and launder proceeds related to the sales of controlled substances. I am also familiar with the methods employed by large-scale DTO's in attempts to thwart detection by law enforcement including but not limited to the use of cellular telephone technology, counter surveillance techniques, false or fictitious identities and addresses, and coded communications. Based on my training and experience, I am familiar with controlled substance traffickers' methods of operation, including their methods of distribution, storage, and transportation of controlled substances, their methods of collecting proceeds of controlled substance trafficking, and their methods of laundering money to conceal the nature of the proceeds. During the course of my employment, I have also become familiar with the ordinary meaning of controlled substance slang and jargon, with the methods of packaging, consuming and transferring of controlled substances, and I am familiar with the manners and techniques of traffickers in anabolic steroids.

5.     Based on my training and experience, and my conversations with other law enforcement personnel, raw anabolic steroid powders are a Schedule III Controlled Substance that are often distributed via parcel shipments from source countries such as China and Turkey. I am aware that illegal steroid traffickers will purchase and import bulk quantities of steroid powders from foreign countries such as China or Turkey in order to manufacture anabolic steroids in liquid or pill/tablet form for retail distribution. I know that individuals involved in the distribution of steroids market and advertise the sale of steroids through internet forums, messaging boards, trade shows, weight lifting events, local gyms, and other sports related events; and, similar to other traffickers of controlled substances, individuals trafficking in steroids receive payment in cash, along with other commercial wire transfers such as MoneyGram and Western Union; and, financial applications including Zelle, Pay Pal, CashApp, Zelle, and Green Dot.

6.     The investigation underlying the attached warrant is an investigation

3

by Special Agents from the DEA and IRS, along with state, and local law enforcement agents and officers. Special Agents have access to the Financial Crimes Enforcement Network ("FinCEN") Portal. This is a database that maintains, among other forms, the Department of Treasury FinCEN Form 104, a Currency Transaction Report ("CTR") filed by financial institutions. Through the FinCEN Portal, agents can obtain information on how many CTRs are filed on an individual or business and by which financial institution. The FinCEN Portal also maintains registration records for every federally registered Money Transmitting Business ("MTB"), as required under Title 31, United States Code, Section 5330.

7.      The facts set forth in this affidavit are based upon my training, personal experience, and information obtained from other law enforcement agents, investigators, and the collective experiences related to me by other law enforcement personnel who specialize in investigations relating to the sale and distribution of controlled substances and the receipt, transfer, and use of proceeds from the sale of controlled substances. Since this Affidavit is for a limited purpose, I have not included every fact I know about this investigation. I set forth only facts necessary to establish probable cause for the issuance of the requested warrants. Dates and times are approximate

## ACCOUNTS TO BE SEIZED

8.      This affidavit is submitted in support of an application for a warrant to seize all money, funds, and credits on deposit in, for the benefit of, or attributable to Mission Federal Credit Union account no. 0091631792 ("**Subject Account 1**") held in the name Edgar Feliciano ("Feliciano"); and Mission Federal Credit Union account no. 0091641319 ("**Subject Account 2**"), held in the name "Elite Bodies by Eddie, LLC" (hereafter collectively referred to as "**Subject Accounts**").

## STATUTORY BASES FOR SEIZURE AND FORFEITURE

9.      As set forth below, there is probable cause to believe that the **Subject Accounts** contain proceeds of the illicit sales of controlled substances, and the

4

accounts are properties involved in money laundering in violation of Title 18, United States Code, Section 1956 (money laundering) and Title 21, United States Code, Sections 841, 846 and 856 (manufacturing and distributing a controlled substance, conspiracy to commit same, and maintaining a drug-involved premises). All monies, funds, and credits on deposit or attributable to the **Subject Accounts** are therefore subject to forfeiture to the United States pursuant to Title 18, United States Code, Sections 981(a)(1)(A) and 982(a)(1) and Title 21, United States Code, Sections 853(a)(1) and (a)(2), and 881(a)(6).

## *MONEY LAUNDERING*

10.     It is a violation of Title 18, United States Code, Section 1956 for a person, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, to conduct, or attempt to conduct, such a financial transaction with the intent to promote the carrying on of specified unlawful activity, which in fact involves the proceeds of specified unlawful activity (including proceeds of violations of Title 21, United States Code, Sections 841, 846 and 856). Conducting financial transactions with drug-trafficking proceeds with the intent to conceal or disguise the source, ownership or control of the proceeds is a form of money laundering in violation of Title 18, United States Code, Section 1956(a)(1)(B).  Drug trafficking is a specified unlawful activity for purposes of money laundering under Section 1956, and the spending of such property in amounts in excess of $10,000 is also a form of money laundering under Section 1957.

11.     Title 18, United States Code, Section 981(a)(1)(A) provides for the forfeiture to the United States of any property, real or personal, involved in a transaction or attempted transaction in violation of section 1956. Title 18, United States Code, Section 982(a)(1) similarly provides that the Court, in imposing a sentence on a person convicted of an offense in violation of section 1956, shall order that the person forfeit to the United States any property, real or personal involved in such offense, or any property traceable to such property.

*DRUG TRAFFICKING*

12.     Title 21, United States Code, Section 853(a), provides for forfeiture of all property constituting or derived from any proceeds obtained, directly or indirectly, as the result of the sale of a controlled substance. It also provides for forfeiture of any property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violation; and provides that the court, in imposing sentence, shall order that the person forfeit to the United States any such property. Furthermore, there is a rebuttable presumption at trial that any property of a person convicted of a felony under this subchapter or subchapter II is subject to forfeiture under this section if the United States establishes by a preponderance of the evidence that, (1) such property was acquired by such person during the period of the violation of this subchapter or subchapter II or within a reasonable time after such period; and (2) there was no likely source for such property other than the violation.

13.     Title 21, United States Code, Section 881(a)(6) provides for the forfeiture to the United States of all monies furnished in exchange for a controlled substance or listed chemical, all proceeds traceable to such an exchange, and all moneys used or intended to be used to facilitate a violation of Title 21.

*SEIZURE WARRANTS*

14.     Pursuant to Title 18, United States Code, Section 981(b)(3), a seizure warrant may be issued by a judicial officer in any district in which a forfeiture action against the property may be filed under Title 28, United States Code, Section 1355(b), and may be executed in any district in which the property is found. Title 18, United States Code, Section 981(b)(2) provides for the issuance of a seizure warrant in the same manner as provided for a search warrant.  Pursuant to Title 21, United States Code, Section 881(b) a seizure warrant may be issued in the manner set forth in Title 18, United States Code, Section 981(b),

15.     Venue is proper in this district for the civil forfeiture of the funds in the

**Subject Accounts** pursuant to Title 28, United States Code, Section 1355(b)(1)(A) because acts or omissions giving rise to the forfeiture occurred in this district, as described in more detail below.

16.     Pursuant to Title 18, United States Code, Section 982(b)(1), seizure warrants issued for violations of Title 18, United States Code, Section 1956 and 1343 are both governed by Title 21, United States Code, Section 853, which, at Section 853(f), authorizes the United States to "request issuance of a warrant authorizing the seizure of property subject to forfeiture under this section in the same manner as provided for a search warrant."

17.     Title 21, United States Code, Section 853(e) permits the United States to apply for a protective order, restraining order, or other injunction prior to filing an indictment or information alleging forfeiture of the funds in the **Subject Accounts.** But, Section 853(f) also provides: "If the court determines that there is probable cause to believe that the property to be seized would, in the event of conviction, be subject to forfeiture and that an order under subsection (e) of this section may not be sufficient to assure the availability of the property for forfeiture, the court shall issue a warrant authorizing the seizure of such property."  Title 21, United States Code, Section 881 has no such provision.

18.     Seizing the funds in the **Subject Accounts** will ensure that the contents thereof are not dissipated or otherwise put beyond the reach of law enforcement. As described below, the **Subject Accounts** are utilized to receive funds resulting in the sale of controlled substances. And, as also described below, there is probable cause to believe that the accountholder will remove the funds and transfer to others at the direction of or in agreement with the accountholder. Accordingly, I submit that a protective order under Title 21, United States Code, Section 853(e) is insufficient to assure the availability of the funds in the **Subject Accounts** for forfeiture at a future date.

19.     A seizure warrant, as opposed to a protective order, will secure the funds

1    for forfeiture in the event of conviction. In my experience, protective orders fail to

2    provide the same effect as a seizure warrant because protective orders must be

3    processed by a financial institution. This requires input and action by multiple layers

4    of administration in the financial institution. As a result, there have been recent

5    instances where the administrative procedures by a financial institution were

6    incomplete or untimely and contents of accounts were dissipated. In addition, the

7    requirement for a finding with respect to the insufficiency of a restraining order

8    applies only to the request for a warrant under Title 18, United States Code, Section

9    982 (criminal forfeiture), not to the request based upon Title 18, United States Code,

10   Section 981 (civil forfeiture) and not to the request based upon Title 21, United States

11   Code, Section 881; both of which provide grounds to seize the contents of the **Subject**

12   **Accounts.** Accordingly, I believe that there is probable cause for the issuance of the

13   requested seizure warrant for the all monies, funds, and credits found in or

14   attributable to the **Subject Accounts**.

### FACTS ESTABLISHING PROBABLE CAUSE

*Feliciano's History of Distributing Schedule III Controlled Substances*

17        20.    As described in greater detail below, Edgar Lopez Feliciano ("Feliciano")

18   has been involved in trafficking Schedule III anabolic steroids for several years.

19   Moreover, according to recent physical surveillance and seizures as recent as

20   February 2023, Feliciano currently continues to engage in the ongoing acquisition,

21   creation, and distribution of Schedule III anabolic steroids. Lastly, as set forth below,

22   Feliciano engaged in the daily creation and distribution of Schedule III anabolic

23   steroids with the use of at least one dedicated creation/distribution center located at

24   2182 Pointe Parkway, Spring Valley, California ("Pointe Residence"); that was until

25   law enforcement executed a search warrant on February 28, 2023 at the Pointe

26   Residence and seized the pill press used to create the steroids Feliciano would

27   distribute through the U.S. Mail system.

28   ///

1   *Introduction of Feliciano*

2   *February 22, 2017 Seizure of Anabolic Steroids*

3   21.   On February 22, 2017, agents learned that an international parcel,

4   originally from Hong Kong, arrived at a United Parcel Service ("UPS") facility in

5   Chula Vista, California, and that the parcel had been damaged in transit. Upon

6   inspection, UPS personnel discovered that the parcel contained two clear plastic bags

7   containing a white powdery substance. This parcel was marked with two separate

8   shipping labels: 1) an original international Hong Kong Post label, and 2) a

9   subsequently applied domestic UPS label; evidence that the package arrived in the

10  U.S. and was "re-mailed" to the actual recipient/purchaser.

11  22.   A subsequent forensic analysis determined that the white powdery

12  substance was 995 grams of testosterone enanthate (a Schedule III anabolic steroid),

13  and 997 grams of methandienone (a Schedule III anabolic steroid).

14  *Feliciano Admits to Distributing Steroids*

15  23.   During an interview in February 2017, Feliciano admitted that he

16  knowingly distributed steroids. For example, Feliciano stated that he knew the

17  February 22, 2017 Parcel contained one kilogram of "Dbol" [referring to Dianabol;

18  brand name for the chemical Methandrostenolone, an anabolic steroid] and one

19  kilogram of "test" [referring to testosterone]. Feliciano also admitted to purchasing

20  raw anabolic steroid powders from China over the internet via Skype. According to

21  Feliciano, the price of one kilogram of Dbol was purportedly $1,000.00 USD and the

22  price of one kilogram of testosterone was $500.00 USD. Feliciano further stated that

23  he [Feliciano] used MoneyGram and Western Union to pay his overseas suppliers for

24  the steroid powders. Feliciano also stated "Zaid" [Aoro] was doing him [Feliciano] a

25  favor by renting the mailbox at the Camino Canada UPS Store. Feliciano had asked

26  Aoro to rent the mailbox because Feliciano had been caught trafficking steroid

27  parcels in the past and that "ICE" [referring to Immigration and Customs

28  Enforcement] agents raided his [Feliciano's] residence in 2012 for steroid

distribution. According to Feliciano, Aoro knew the incoming parcels contained steroids. Feliciano also admitted to paying for Aoro's assistance by giving Aoro four vials of prepared testosterone per month.

*Introduction and Delivery of Pill Press*

24.    On March 5, 2021, United States Customs and Border Protection ("CBP") intercepted a pill press that originated from China and was destined for "Elite Bodies by Eddie, LLC," listing the address for 2182 Pointe Parkway, Spring Valley, California ("2182 Pointe Parkway"). As described above, "Elite Bodies by Eddie, LLC" is a business where Feliciano is registered with the state as the company's CEO. CBP detained the pill press because the required documentation, a DEA Form 452 , was not submitted prior to the importation of a table press machine or "pill press." A DEA Form 452 was retroactively created by the following user on March 5, 2021: "EDGARFELICIANO68". The DEA Form 452 listed the following as a point of contact: "Edgar L. Feliciano, (619) 244-5364."

25.    On March 15, 2021, agents observed Feliciano personally accept delivery of the pill press at 2182 Pointe Parkway.

*February 6, 2023 Seizure of Steroids Originating from 2182 Pointe Parkway*

26.    On February 6, 2023, agents conducted surveillance at Pointe Parkway. At approximately 4:09 p.m., agents observed Feliciano at Pointe Parkway. At approximately 4:46 p.m., agents observed two unidentified male individuals exit Pointe Parkway and load cardboard boxes filled with parcels into a black Lincoln Aviator ("Aviator") registered to "Elite Bodies by Eddie, LLC." Agents then followed the black Lincoln Aviator as it departed Pointe Parkway and proceeded to the Spring Valley Post Office.

27.    Investigators observed two unidentified male individuals unload the parcels at the rear loading dock of the Post Office and then exit the parking lot in the Aviator. After the Aviator left the parking lot, law enforcement proceeded to the rear loading dock of the Post Office and located 306 parcels, the majority of which were

packaged in brown Uline Padded Mailers approximately 8.75" x 6.25" with a distinctive green line at the bottom of the shipping label similar to previous parcels seized during the course of this investigation. The 306 parcels all contained the same return address information, to wit, "Albert Ajero, 2514 Jamacha Road Unit 502-02, El Cajon CA 92019-6313".

28.   On February 13, 2023, agents searched the three mail parcels seized on February 6, 2023, pursuant to federal search warrants issued on February 9, 2023. Discovered within the parcels were overtly labeled Schedule III anabolic steroids.

29.   Based on the ongoing and continued investigation of Feliciano, including frequent and repeated surveillance of Feliciano and 2182 Pointe Parkway, as well as multiple seizures of Schedule III anabolic steroids originating from 2182 Pointe Parkway since 2018 (and as recent as February 6, 2023), and numerous subpoena responses, investigators believe that Feliciano continues to distribute Schedule III controlled substances and continues to funnel the proceeds from the illegal drug trafficking business through the **Subject Accounts**.

### *Background of Feliciano's Companies*

#### *Introduction of Elite Bodies by Eddie*

30.   California Secretary of State records show that Elite Bodies by Eddie LLC was registered as a limited liability company on November 3, 2015, with the initial organizer listed as Cheyenne Moseley, Assistant Secretary, LegalZoom.com Inc. Since then, Feliciano has filed two Statements of Information, on January 8, 2020 and September 20, 2021 with the State of California. Feliciano is listed as the Chief Executive Officer, and Manager. Feliciano was also listed as the Agent for Service of Process, and signed the most recent Statement of Information as the "CEO."

#### *Introduction of Odin Elite Apparel*

31.   California Secretary of State records show that Odin Elite Apparel, LLC was registered as a limited liability company on June 8, 2021, with the original

organizer listed as Cheyenne Moseley, Assistant Secretary, LegalZoom.com Inc. Since then, Feliciano has filed two Statements of Information, on July 7, 2021 and October 6, 2021 with the State of California. Feliciano is listed as a "Manager or Member," and he signed the most recent Statement of Information as the "CEO."

### *Analysis of **Subject Accounts***

#### *Background – Former Account*

32.    Based on records received in response to a law enforcement request from Citibank, Feliciano opened business checking account number ending in 7219 at Citibank (hereinafter the "Former Account") in the business name of "Elite Bodies by Eddie, LLC" on January 6, 2020. The application used the "Elite Bodies by Eddie, LLC" Taxpayer ID number, and the address, 2182 Pointe Parkway, Spring Valley, CA. The business deposit account application listed the business description as "Personal Training and Gym Memberships" with an annual gross revenue of $2,400,000 and an annual net profit of $500,000. The application also used Feliciano's personally identifiable information ("PII") including his social security number, date of birth, and driver's license. Feliciano signed the application as the "Owner." Records from Citibank also included signature cards that listed Edgar Feliciano and Mai Tran as signers on account ending in 7219.

33.    A review of transactions into Former Account from January 2020 through November 2021 revealed approximately $5 million USD in deposits. Deposits were primarily from the following sources:

| Source | 1/1/2020 – 12/31/2020 | 1/1/2021– 10/31/2021 (closing) |
|---|---|---|
| Apple Cash Transfers, Zelle, Venmo, Paypal, Square, Cash App Instant Payment Credit | $768,272.93 | $616,776.17 |

| Cash, Money Orders and ATM Deposits | $253,260.00 | $433,139.00 |
|---|---|---|
| Bank of America Merchant Deposits and Other Merchant Deposits | $63,172.19 | $325,693.78 |
| SBA EIDL (Economic Injury Disaster Loan) | $504,900.00 | |
| PPP Loan | $96,702.00 | $95,000 |
| Treasury 310 Miscellaneous Pay | $45,895.88 | |
| Coinbase | | $956,670.10 |

a. The investigation has revealed that Feliciano receives proceeds from the sale of Schedule III anabolic steroids through cash transfer apps, such as Zelle. As shown above, approximately 40 percent of all deposits in 2020 were from electronic transfers. Feliciano is not known to operate any personal training business from his home as he claims on all business paperwork. His only source of income appears to be from the illegal sale of Schedule III anabolic steroids.

b. Feliciano also received an SBA ("Small Business Administration") Loan for over $500,000 in order to maintain his business during the pandemic in 2020. Feliciano also received a PPP ("Paycheck Protection Program") Loan in order to pay his employees during the pandemic. These were received in the Former Account.

c. Feliciano also uses the Former Account to pay for business expenses, such as raw materials used to manufacture anabolic steroids, and a pill

13

press machine. From January 2020 through October 31, 2021, Feliciano sent $419,804 to Chinese businesses purportedly for the purchase of raw materials. Furthermore, Feliciano sent $213,420 to Capsulcn International CO. Ltd in China for the purchase of a pill press machine. In the same time period, Feliciano also wrote checks or sent wires to Shun-An International Express Inc totaling $509,755. It is unknown what this business does, however, two checks referenced "business consultant".

*SBA and PPP Loans*

34.     Records obtained from SBA revealed Feliciano applied for a U.S. Small Business Administration ("SBA") Economic Injury Disaster Loan ("EIDL") on April 1, 2020.  The EIDL is a loan directly from SBA that must be repaid; low-interest, fixed-rate, long-term loan to help overcome the effects of the pandemic by providing working capital to meet operating expenses. These loans are not eligible for businesses engaged in illegal activity under federal, state, or local law.

35.     Feliciano indicated on the application that the gross revenues for "Elite Bodies by Eddie, LLC" prior to January 31, 2020 is $2,230,938 and the Cost of Goods Sold ("COGS") is $901,047. Feliciano indicated this business is a "health club", and is engaged in "health services", and he is 100% owner. The application also listed Adam Ringer, from Arin Funding LLC, as the representative. Feliciano paid Arin Funding LLC on two occasions in 2020, $999 on March 25, 2020 and $15,000 on May 29, 2020.

36.     Feliciano received two payments from the SBA into the Former Account—$5,000 on April 14, 2020 and $499,900 on April 23, 2020. After receiving the credit for $499,900, Feliciano wrote a check to Monica Morrison ("Morrison") for $25,000, and also wired $75,000 to Mutant Gear Limited in China, which based on the investigation, agents continue to believe was for the purchase of raw materials used to manufacture Schedule III anabolic steroids.

37.     Feliciano applied for a PPP Loan on May 4, 2020. On the application, Feliciano indicated he is 100% owner of "Elite Bodies by Eddie, LLC" and has 6 employees with an average monthly payroll of $38,361. The loan was funded by Customers Bank and $96,702 was deposited into the Former Account on May 6, 2020. On May 8, 2020, Feliciano wired $22,550 to Mutant Gear Limited in China and another $51,200 on May 14, 2020, again, believed to be for the purchase of raw materials used to manufacture anabolic steroids.

38.     Feliciano applied for a second PPP Loan on March 2, 2021 for $95,000. This loan was funded by Transportation Alliance Bank Inc. ("TAB") Bank on May 5, 2021 and $95,000 was deposited into the Former Account. On the application, Feliciano indicated that he has 5 employees paid through W-2's for his business. Feliciano provided Forms 941, Employer's Quarterly Federal Tax Return, for the year 2021, indicating that he has 5 employees with total wages of $114,000 each quarter. Feliciano also provided page 1 of the 2020 Form 1120-S U.S. Income Tax Return for an "S" Corporation for "Elite Bodies by Eddie, LLC," showing gross receipts of $950,250.

39.     Due to the nature of Feliciano's illegal business, he is ineligible to receive the EIDL or PPP Loans he received.

40.     Feliciano closed the Former Account on November 1, 2021, and opened accounts at Chase Bank and Western Alliance Bank (which have since been closed), prior to opening the **Subject Accounts**, where agents continue to believe Feliciano funnels his drug trafficking proceeds similar to the Former Account.

41.     As it pertains to this application, agents from DEA and IRS have reviewed Mission Federal Credit Union records regarding the following bank accounts:

    a.     **Subject Account 1:** These records showed that Feliciano opened a Mission Federal Credit Union personal account ending in -1792 in November 2021 and has sole signatory authority over this account.

b.   **Subject Account 2:** These records showed that Feliciano opened a Mission Federal Credit Union business account ending in -1319 in February 2022 and had sole signatory authority over this account. In August 2022, Mai Tran was added to the account as a signer. Feliciano purported that the account was to be utilized by the business "Elite Bodies by Eddie, LCC."

### *Subject Account 1*

42.   Based on records received in response to a law enforcement request from Mission Federal Credit Union, Feliciano opened personal checking account number ending 1792 (**Subject Account 1**) on November 4, 2021 using his PII including his social security number, date of birth and driver's license.

43.   A review of transactions into **Subject Account 1** from November 4, 2021 through October 31, 2022 revealed approximately $414,000 in deposits consisting primarily of the following listed. Debits from the account consist of primarily personal expenses.

| Source | Subject Account 1 11/4/2021 – 10/31/2022 | Subject Account 2 2/16/2022 – 10/31/2022 |
|---|---|---|
| Apple Cash Transfers, Zelle, Venmo, Paypal, Square, Cash App Instant Payment Credit | $45,958 | $626,810.72 |
| Cash, Money Orders and ATM Deposits | $13,700 | N/A |
| Merchant Deposits | N/A | $394,227.27 |

| | | |
|---|---|---|
| Odin Elite Apparel Wires (and one wire from Elite Bodies) | $44,000 | $31,000 |
| ADP Retirement Services | $41,701.29 | N/A |
| Elite Bodies By Eddie LLC Payroll | $202,417.50 | N/A |
| Tax Refunds (IRS, FTB) | $18,386 | N/A |
| Loan (National Funding) | | $188,504.00 |
| Coinbase | $48,742.00 | $1,058,745.47 |

### *Subject Account 2*

44.     Based on records received in response to a law enforcement request from Mission Federal Credit Union, Feliciano opened business checking account number ending 1319 ("**Subject Account 2**") on February 16, 2022 using his PII including his social security number, date of birth and driver's license. An individual, Mai Tran, is also listed as a signer on the account. Feliciano provided the bank with a copy of the Articles of Organization of a Limited Liability Company (LLC) dated November 3, 2015, as well as copy Operating Agreement for "Elite Bodies by Eddie, LLC." The Operating Agreement signed by Feliciano on October 21, 2021 lists Feliciano as a Member with 100% interest. Feliciano also provided the bank with a copy of the Secretary of State Statement of Information for "Elite Bodies by Eddie, LLC" filed on September 20, 2021 with the State of California. The Statement of Information lists Feliciano as the CEO, and describes the business as "fitness consultant."

45.     A review of transactions into "**Subject Account 2**" from February 16, 2022 through October 31, 2022 revealed approximately $2.3 million in deposits consisting primarily of the table listed above under "**Subject Account 2**". The square deposits are from a variety of individuals from different cities in the United

States. This account was also being used to pay salaries as indicated by check memos, and ADP payroll debits. This account was also used to pay for vehicles, credit cards, and mortgage payments.

46.     On February 28, 2023, law enforcement executed search warrants at Pointe Residence and Feliciano's primary residence in Poway, California. During the execution of the search warrant at Pointe Residence, Feliciano was taken in custody pursuant to the arrest warrant issued on February 24, 2023 by the Hon. Barbara L. Major, United States Magistrate Judge, Southern District of California, based on a complaint alleging violation of Title 21, United States Code, Section 856(a)(1) and (a)(2), for Maintaining a Drug-Involved Premises.

47.     On February 28, 2023, Feliciano was advised of his *Miranda* rights and he elected to make a statement. Among other things, Feliciano stated that his sole source of income is the distribution of "performance enhancing drugs" because he (Feliciano) further stated that he does not like referring to them as steroids. Feliciano further acknowledged that the substances he was distributing was anabolic steroids but prefers using the term "performance enhancing drugs." Feliciano stated that banks have historically closed his accounts over the years. Feliciano further stated that he uses the banking system to operate his steroid distribution business by receiving proceeds from the distribution of steroids. Feliciano also stated that he accepts electronic payment methods when distributing the steroids including CashApp, Zelle, and Clover.

48.     Based on the investigation and facts set forth above, including Feliciano's admissions that he uses the banking system to further his illegal steroid distribution network, I believe the **Subject Accounts** are being used to receive proceeds from the illegal sale of Schedule III anabolic steroids.

## **CONCLUSION**

49.     The evidence set forth above establishes probable cause to believe that the funds in **Subject Accounts** are subject to seizure and forfeiture on the following

grounds: (1) **Subject Accounts** represent proceeds that are traceable to violations of Title 21, United States Code, Sections 841, 846 and 856; and, (2), the **Subject Accounts** are "involved in" promotional money laundering activity in violation of Title 18, United States Code, Sections 1956(a)(1)(A)(i) and (a)(2). To the extent there may be any legal source of income commingled with criminal proceeds in the **Subject Accounts,** the entire account is forfeitable as property "involved in" money laundering. Additionally, pursuant to Title 18, United States Code, Section 984(a) and (b), in any forfeiture action in rem in which the subject property is funds deposited in an account in a financial institution, it shall not be necessary for the Government to identify the specific property involved in the offense that is the basis for the forfeiture. Nor is it a defense that the property involved in such an offense has been removed and replaced by identical property. It is of no matter that the original proceeds may have been replaced by new proceeds or legitimate funds.

50.    Based on the foregoing, there is probable cause to believe that all monies, funds and credits in or attributable to the **Subject Accounts** as more fully described on Attachment A have been involved in the commission of the crimes of money laundering and unlicensed money transmitting and are subject to seizure and forfeiture to the United States pursuant to Title 18, United States Code, Sections 981(a)(1)(A) and 982(a)(1) and pursuant to Title 21, United States Code, Sections 853(a)(1) and (a)(2), and 881(a)(6).

///
///
///
///
///
///
///
///

1      51.     Based upon the facts described above, I respectfully request that the

2  Court issue seizure warrants for all funds in the **Subject Accounts**.

3

4

5  _James R. Gillis_
   _____

6  JAMES R. GILLIS, Special Agent
   Drug Enforcement Administration

7

8  Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P.

9  4.1 by telephone on this **1st** day of MARCH 2023.

10

11

12  _Allison H. Goddard_
    _____

13  HON. ALLISON H. GODDARD
    United States Magistrate Judge,

14  Southern District of California

15

16

17

18

19

20

21

22

23

24

25

26

27

28